UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE


DAVID HERZIG, et al.                                                                    PLAINTIFFS


v.                                                            CIVIL ACTION NO. 3:13CV-299-S


SUNTRUST MORTGAGE, INC., et al.                                              DEFENDANTS


## MEMORANDUM OPINION


This matter is before the court for consideration of the following motions:

(1)  Motion of the defendants, SunTrust Mortgage, Inc., SunTrust Bank, and SunTrust Banks, Inc., (collectively herein, "SunTrust"), to dismiss the Complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 8, 9, and 12(b)(6).  DN 4.

(2)  Motion of the defendants, SunTrust, to strike as untimely the plaintiffs' response to SunTrust's motion to dismiss.  DN 11.

(3)  Motion of the plaintiffs, David and Belinda Herzig (collectively herein, "Herzig"), for oral argument on the defendants' motion to dismiss, or, alternatively, for leave to amend the Complaint.  DN 13.[1]

In this action, the plaintiffs, David and Belinda Herzig, take issue with the handling of their

mortgage obligations with respect to a home that they purchased in Miami Beach, Florida in 1998.

The problems appear to have begun after SunTrust purportedly determined that the Herzigs'

---

[1]In the course of evaluating the sufficiency of the Complaint on SunTrust's motion to dismiss, the Court has become aware that the Complaint is unsigned by either David or Belinda Herzig, as required by Fed.R.Civ.P. 11(a).  Other pleadings are signed and filed by David Herzig purportedly on behalf of himself and Belinda Herzig.  Despite the fact that David Herzig is a licensed attorney admitted to practice before this Court, he has not entered an appearance on behalf of Belinda Herzig, nor does his signature indicate such representation.

windstorm policy had lapsed and allegedly obtained "forced place windstorm coverage"[2] on the property, adding the alleged cost to Herzig's mortgage payment. Herzig raises numerous issues with regard to his dealings with SunTrust, not the least of which was the filing of a foreclosure complaint in June, 2012 which SunTrust subsequently dismissed.

As an initial matter, the court notes that the motion of SunTrust to strike Herzig's response to the motion to dismiss as untimely recounts accurately that the response was filed well out of time. Pursuant to the Joint Local Rules for the Eastern and Western Districts of Kentucky, a response to a motion is due twenty-one days from the date of service of the motion. LR 7.1(c). Failure to timely respond may be grounds for granting the motion. *Id.* Herzig filed his response brief over ninety days after service of the motion to dismiss. He did not move for an extension of time. His response brief was unaccompanied by a motion for leave to file out of time. The Court has thus been offered no excuse for Herzig's complete disregard for the rules of this court, and dismissal would be justified.

However, it is the preference of this court to address fully briefed motions, and decide matters on more than mere technicalities. Therefore, the Court, in its discretion, will deny the motion to strike and will consider Herzig's response to the motion to dismiss.

Herzig filed a motion seeking oral argument on the motion to dismiss, or, alternatively, leave to amend the Complaint. Herzig states that "...if the court is inclined to grant the Defendant's Motion to Dismiss, oral arguments on the merits would be instructive and helpful." DN 13, p. 3.

---

[2]It appears undisputed that the mortgage required that various forms of insurance be maintained on the property, including windstorm coverage, and that SunTrust could obtain such insurance at its option and at the borrower's expense if it was not so maintained. The parties refer to "forced place windstorm coverage" in their briefs.

The Court finds that oral argument is unnecessary. The issues are uncomplicated, and the motion to dismiss has been fully briefed. Oral argument will be denied.[3]

Herzig's motion alternatively seeks leave to amend the Complaint. The motion for leave to amend the Complaint is deficient. Herzig did not tender a proposed Amended Complaint. Herzig did not indicate what amendments he would make to the Complaint or how such amendments would cure any deficiencies. Rather, Herzig states that "In the event the court is persuaded by the Defendants' Motion, the Plaintiff should be granted leave to amend the complaint in accordance with the court's decision." *Id.*, p. 4. He states that "an amended complaint would not be futile and we are at the earliest stage of litigation. For example, if the court believed that the Fraud count was not plead with specificity, then the Plaintiff should be granted leave to amend the complaint to plead the court with more factual allegations." *Id.* at 5. This motion for leave to amend was filed, in conjunction with the request for oral argument, twenty-one days after its response, and three days after SunTrust filed its reply. SunTrust filed a response in opposition to Herzig's motion, specifically calling to Herzig's attention that the motion stated no basis for leave to amend, nor referenced any tendered proposed amended pleading. Herzig filed no reply to SunTrust's opposition, nor moved for leave to tender a proposed Amended Complaint.

While leave to amend should be granted "when justice so requires," pursuant to Fed.R.Civ.P. 15(a)(2), the court simply has been provided nothing with which to make that determination. A finding of deficiencies in the Complaint on a motion to dismiss does not establish that "justice so

---

[3]Herzig contends that failure to grant a hearing before ruling on a motion for summary judgment is reversible error, citing a Florida state case. First, the matter before this court is a motion to dismiss, testing the sufficiency of the Complaint, not summary judgment. Second, Florida state cases and Florida procedural rules are inapplicable to the question of entitlement to a hearing. This is a matter of federal procedure. *See Rupert v. Daggett*, 695 F.3d 417, 423 (6th Cir. 2012); *Kloss v. RBS Citizens, NA*, No. 13-12833, 2014 WL 495408, *10 (E.D.Mich. Feb. 6, 2014)("there is no right under the Due Process Clause to an oral hearing on a motion to dismiss.").

requires" that the plaintiff be afforded a blanket opportunity to replead the Complaint; or, in the

words of the Fourth Circuit, "a "do over." *Francis v. Giacomelli*, 588 F.3d 186, 197 (4th Cir. 2009).

As stated in *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471,

485-86 (6th Cir. 2010),

> In their opposition to Ernst & Young's motion to dismiss,[4] plaintiff asked the district
> court to allow them the opportunity to move for amendment should the court "grant
> any portion" of the motion to dismiss...As stated in *PR Diamonds, Inc.*, "a bare
> request in an opposition to a motion to dismiss—without any indication of the
> particular grounds on which amendment is sought...does not constitute a motion
> within the contemplation of Rule 15(a)." *Id*...As the *Belaga* decision stated in
> affirming the district court's dismissal of the plaintiffs' complaint with prejudice:
>
>> Had plaintiffs filed a motion to amend the complaint prior to th[e] Court's
>> consideration of the motions to dismiss and accompanied that motion with
>> a memorandum identifying the proposed amendments, the Court would have
>> considered the motions to dismiss in light of the proposed amendments to the
>> complaint...Absent such a motion, however, Defendant was entitled to review
>> of the complaint as filed pursuant to Rule 12(b)(6). *Plaintiffs were not
>> entitled to an advisory opinion from the Court informing them of the
>> deficiencies* of the complaint and then an opportunity to cure those
>> deficiencies.

622 F.3d at 485-486 (emphasis in original), *quoting Belaga v. PNC Bank, Ohio, National Assoc.*,

214 F.3d 776, 783-84 (6th Cir. 2000); *see also, Delfrate v. Shanner*, 229 F.3d 1151, 2000 WL

1206584, *2 (6th Cir. Aug. 17, 2000)(unpubl.)("...even if the district court should have considered

the plaintiffs' request to amend as a formal motion...amendment would not be warranted. The

plaintiffs did not indicate how amendment would cure the deficiencies of their complaint or tender

---

[4]In *Louisiana School* and in *PR Diamonds* to which it cites, the request for leave to amend the complaint was contained
in the motion to dismiss rather than by separate motion. Despite the fact that Herzig has filed separately a motion for oral argument
or alternatively leave to amend, it is identical to the request in the *Louisiana School* and *PR Diamond* cases in which the plaintiff
made a "bare request" for leave should the court dismiss any portion of the complaint. Herzig states specifically that he "should be
granted leave to amend the complaint *in accordance with the court's decision*." This is precisely the sort of "advisory opinion"
condemned in these cases.

a proposed amended complaint for the district court's review."). Thus, for the foregoing reasons, leave to amend the complaint will be denied.

The court will address the sufficiency of the claims *seriatim*.

To overcome a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). As explained in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009),

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [*Twombly, supra.*] at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id..*, at 557, 127 S.Ct. 1955 (bracket omitted).

This matter was filed in this court under our diversity jurisdiction. The Complaint alleges that Herzig is a citizen of Kentucky, and SunTrust, in its various forms, is a citizen of Georgia and Virginia. Herzig further alleges that the amount in controversy exceeds $75,000.00.

With respect to venue, Herzig alleges that "[v]enue is proper because although, the underlying obligations are governed by Florida law, the execution of the documents were [sic] in Florida, the loan originated in Florida, the underlying collateral is in Florida and Defendant conducted substantial business dealings with Plaintiff in Florida, Defendant additionally had another loan and mortgage relationship with Herzig in Kentucky. Further, Defendant's acts that substantially give rise to this cause of action are that Defendant via email, mailings, and telephone calls fraudulently induced Plaintiff to make improper payments to Defendants." DN 1, ¶ 8.

Apparently, SunTrust concedes that this court has personal jurisdiction over it. In its motion to dismiss, it has not disputed Herzig's assertion that the court can exercise personal jurisdiction via the Kentucky long-arm statute, KRS 454.210, as SunTrust allegedly conducts business in Kentucky. DN 1, ¶ 7. *See King v. Taylor*, 694 F.3d 650 (6th Cir. 2012)(test for finding forfeiture of a personal-jurisdiction defense through conduct: defendant given plaintiff a reasonable expectation that defendant will defend suit or caused court to go to effort that would be wasted if personal jurisdiction lacking).

Florida substantive law applies to the state law claims in this case. The Mortgage states that federal law and the law of the jurisdiction in which the property is located govern. DN 4-2, p. 12, ¶ 16. The complaint alleges that the property is located in Florida, the loan originated and the documents were executed in Florida. DN 1, ¶ 8. Herzig also alleged that the obligations are governed by Florida law. *Id.* For some unknown and unstated reason, Herzig cites exclusively to Kentucky cases in his brief. Herzig's brief in opposition to SunTrust's motion to dismiss is non-responsive inasmuch as he has failed to address and distinguish any of the caselaw relied upon by SunTrust. Despite the fact that the motion therefore stands virtually unopposed, the court will address each claim and the applicable law relating to it. As Kentucky law does not apply, the court will disregard those state cases.

<u>Count I: R.E.S.P.A., 12 U.S.C. § 2605(e)</u>

In Count I of the Complaint, Herzig alleges that "on or about June 7, 2011 and August 10, 2011, Plaintiff sent a qualified R.E.S.P.A. letter to the Defendant...That as of the date of this Complaint, the Defendants have failed to comply with the demand...That is in violation of

R.E.S.P.A..." DN 1, ¶¶ 39-41.  This constitutes the sum total of the claim, with the incorporation

of paragraphs 1 through 37.

Under the "Facts Giving Rise to this Lawsuit" section of the Complaint, paragraphs 9, 10,

21, and 22 refer to "Qualified Written Requests" which are the subject of this claim.  These

paragraphs state:

> 9.  On or about August 1998, Plaintiff purchased a home located in Miami Beach,
> Florida (the "Property").  Plaintiff, through a mortgage broker, secured a loan for the
> purchase of the Property.  This loan was allegedly with SunTrust Mortgage.  Despite
> repeated requests under two different Qualified Written Requests on or about June 7,
> 2011 and August 10, 2011, (collectively the "QWRs")(a copy of which is attached
> as *Exhibit A*) and multiple telephone and email requests, Defendants have failed to
> provide proof of an original loan agreement or mortgage.

> 10.  Plaintiff believed that he refinanced the home with SunTrust Mortgage.  Despite
> repeated requests under two different QWRs, and multiple telephone and email
> requests, Defendants have failed to provide proof of an original loan agreement or
> mortgage...

> 21.  Plaintiff requested through the QWRs, telephone calls, emails and letters that
> SunTrust Mortgage provide the information necessary to resolve this dispute.

> 22.  SunTrust Mortgage has failed to respond to either QWR as required within 60
> days, so Plaintiff now has the statutory right under Federal law, R.E.S.P.A. 12 U.S.C.
> § 2605(e) to file a lawsuit for damages, attorneys' fees, and costs.

In *Jensen v. Quality Loan Service Corp.*, 702 F.Supp.2d 1183, 1196-1197 (E.D.Cal. 2010), the court

found a claim under § 2605 deficient:

> To the extent the FAC[5] attempts, however inartfully, to assert a claim under § 2605,
> the FAC fails to allege sufficient facts to state a claim.  The FAC fails to allege that
> JPMorgan was a loan servicer under RESPA.  The FAC also fails to allege facts
> indicating that the written correspondence served on JPMorgan concerned the
> servicing of Plaintiff's loan, which is required to qualify the correspondence as a
> "qualified written request" under RESPA.  A conclusory allegation that the
> correspondence was a "Qualified Written Request" is insufficient.  *See Twombly*, 550

---

[5]First Amended Complaint.

U.S. at 555, 127 S.Ct. 1955 (mere "labels and conclusions" are insufficient to state a claim);  *see also Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 683 (9th Cir. 2009).

Here, Herzig has not alleged that SunTrust is a "loan servicer," as defined by the statute, nor has he alleged that his "QWRs" concerned the servicing of his loan.  Rather, he stated that he requested "proof of an original loan agreement or mortgage," and makes no mention of the servicing of his loan in any respect.  He did not allege how or to what extent he was damaged by the purported breach of RESPA.  He merely states that SunTrust has failed to respond to his requests, and he therefore had a statutory right to file a lawsuit for damages, attorneys' fees, and costs.  "[I]t is clear that merely 'alleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiffs must, at a minimum, also allege that the breach resulted in actual damages.'"  *Straker v. Deutsche Bank National Trust*, No. 3:09-CV-338, 2012 WL 7829989 (M.D.Pa. April 26, 2012), *quoting Hutchinson v. Delaware Sav. Bank FSB*, 410 F.Supp.2d 374, 383 (D.N.J. 2006); *Saldate v. Wilshire Credit Corp.*, 711 F.Supp.2d 1126, 1134 (E.D.Cal. 2010).  *See also, Boston v. Ocwen Loan Servicing, LLC*, No. 3:12CV451, 2013 U.S. Dist. LEXIS 3376, *13 (W.D.N.C. Jan. 9, 2013)(RESPA allegations insufficient under *Twombly* where alleged in conclusory fashion, "Ocwen deliberately failed to properly and timely respond to two (2) requests by Affiant's qualified written requests for information about, and corrections to her mortgage account, in violation of 12 U.S.C. § 2605(e)," finding these allegations "too threadbare to state a claim.").

Herzig urges that it is clear that he has presented SunTrust with QWRs because the letters he sent are "standard in the industry," attaching them as exhibits to his response for the Court's review. DN 9, p. 9.  Herzig referred to these documents in the Complaint, indicating that they were attached as exhibits, although they were, in fact, not so attached.  In any event, as they were

incorporated by reference, consideration of them does not convert the motion to dismiss into one for summary judgment.

The reference in the letters to Herzig's loan consists of the loan number appearing at the top and the first sentence: "I am writing to you to complain about the accounting and servicing of my mortgage and my need for understanding and clarification of various charges, credits, debits, transactions, actions, payments, analyses, and records related to the servicing of my loan from its inception to the present date." DN 9-1, p. 1. The remainder is a lengthy form letter covering a vast array of issues and questions which are not particularized to Herzig's loan at all. The court in *Coleman v. American Home Mortgage Servicing, Inc.*, No. 2:11-cv-00178-GMN-LRL, 2011 WL 6131309 (D.Nev. Dec. 8, 2011) addressed a letter containing virtually identical language to that quoted above also purporting to constitute a QWR. In finding that the letter did not appear to meet the definition of a QWR, as defined in 12 U.S.C. § 2605(e)(1)(B), the court stated:

> Here, Plaintiff's letter does not appear to meet this definition, since his request does not include any statement of the reasons for his belief that the account is in error, nor does it request corrections to the account. Instead, Plaintiff's stated reason for the letter is "to complain about the accounting and servicing of this mortgage and my need for understanding and clarification of various...charges, credits, debits..."Plaintiff demands certain documentation and audits to be done with respect [sic] the loan servicer's practices and procedures. Plaintiff then asks dozens of questions that amount to a discovery request. These requests do not adhere to the letter nor the spirit of the RESPA statute. Accordingly, the Court dismisses this claim without leave to amend.

*Coleman, supra.* at *4.

The Court find the analysis and disposition in *Coleman* to be sound and will also conclude that, not only does Count I not contain sufficient facts to state a claim upon which relief can be granted, but also that the letters upon which Herzig relies do not constitute QWRs as a matter of law.

Count I will be dismissed.

## Count II:  Complaint for Accounting

In Count II, Herzig "requests the Defendant be ordered to provide a strict and total explanation of the accounting of this loan."  DN 1, ¶ 46.  However, SunTrust notes that, as in *Restrepo v. Wells Fargo Bank, N.A.*, No. 09-22436-CIV, 2010 WL 374771 (S.D.Fla. Feb. 3, 2010), Herzig has pled accounting as a separate cause of action but has not provided any authority to support his claim that RESPA permits such a remedy.  Count II will be dismissed.

## Count III: Conversion

Herzig alleges in Count III that "Defendants converted for Defendant's own use the monies given to it by Plaintiff, which was given to Defendants solely for the purpose of payment of an alleged note and mortgage by not applying the amounts to principal and interest as required under the alleged note."  DN 1, ¶ 35.

As stated in *Capital Bank v. G & J Investments Corp*, 468 So.2d 534, 535 (Fla.3d DCA 1985), A mere obligation to pay money may not be enforced by an action for conversion. [citations omitted]."  *Accord, Zaki Kulaibee Establishment v. McFlicker,* 788 F.Supp.2d 1363, 1379 (S.D.Fla. 2011)("Neither an obligation to pay money nor a breach of contract generally give rise to a claim of conversion in tort." [citation omitted]. "Where damages sought in tort are the same as those for breach of contract a plaintiff may not circumvent the contractual relationship by bringing an action in tort."  [citation omitted].).  Herzig does not controvert this authority.  Count III will therefore be dismissed.

## Count IV:  Fraud

In Count IV, Herzig alleges that SunTrust engaged in fraud by representing that forced place

insurance was placed on the Property, the representation was false, as SunTrust "never entered into such insurance" and "had no intention of using any of the money to pay for such insurance..." DN 1, ¶¶ 39-41. He alleges that in February, 2011, SunTrust raised the amount of Herzig's mortgage payments purportedly to include this forced place windstorm coverage, and at that time, Herzig was first notified of this alleged insurance. DN 1, ¶¶ 17, 18. He contends that he then obtained his own insurance policy, but continued to make payments from February to October, 2011 of the full amount required by SunTrust, while he attempted to obtain information from SunTrust concerning his mortgage. DN 1, ¶¶ 19, 20.

Under Florida law, "[a]n aggrieved party proves common law fraud by establishing that: (1) the opposing party made a misrepresentation of material fact, (2) the opposing party knew or should have known the falsity of the statement, (3) the opposing party intended to induce the aggrieved party to rely on the false statement and act on it, and (4) the aggrieved party relied on that statement to his or her detriment." *Jackson v. Shakespeare Foundation, Inc.*, 108 So.3d 587, 595, n. 2 (Fla. 2013). In alleging fraud, the plaintiff

must comply not only with the plausibility criteria articulated in *Twombly* and *Iqbal* but also with Fed.R.Civ.P. 9(b)'s heightened pleading standard, which requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *See also Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007)...We have held that pursuant to 9(b), a plaintiff must allege: ("1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.,* 116 F.3d 1364, 1380-

81 (11th Cir. 1997)...The plaintiff must allege facts with respect to each defendant's participation in the fraud. *Id.* at 1381.

Herzig's fraud claim does not meet the heightened pleading standard of Fed.R.Civ.P. 9(b). He does alleges that SunTrust "represented" that forced place insurance was placed on the Property. To the extent that we can read "represented" as an allegation that SunTrust made a "statement," the Complaint alleges that SunTrust stated that forced place insurance was placed on the property. Herzig further alleges that force place insurance was never obtained by SunTrust and that SunTrust never intended to use the additional amount in Herzig's mortgage payment to pay for such insurance. This allegation, subject as it is to Fed.R.Civ.P. 11, must be taken as true for purposes of ruling on the motion to dismiss. However, the Complaint does not attribute this statement to any person, nor is it clear from Herzig's allegations (DN 1, ¶¶ 17, 18) when and how he learned that the "raised amount included the alleged forced place windstorm coverage." Herzig alleges that the mortgage amount was raised without notice to him. He states that in February 2011 he contacted SunTrust about the increase and at that point was first notified of the alleged forced place insurance. Even if we connect the dots and assume, *arguendo*, that someone on the telephone or in an email or by written correspondence or by Morse code, stated to him sometime in February 2011 that the increased mortgage payment included forced place windstorm coverage, Herzig has not sufficiently alleged that he was misled by any false statement. He alleges, in fact, that he immediately obtained his own private windstorm coverage upon learning from SunTrust that it had, purportedly, placed forced place coverage. He alleges that he made the payments demanded by SunTrust while seeking proof of their payment for the coverage and a copy of the policy. Despite the fact that Herzig claims that the statement that SunTrust placed forced place windstorm coverage on his property was untrue,

he has not alleged that he was misled by this statement.

Herzig has thus failed to plead fraud with the requisite specificity under Fed.R.Civ.P. 9(b) and therefore Count IV must be dismissed.

## Count V:  Unjust Enrichment

Count V states that Herzig "transferred $32,847 (mortgage from February 2010 to October 2011) and continuing to SunTrust Mortgage, thereby conferring a benefit upon Defendant."  DN 1, ¶ 45.  In this Count of the Complaint, Herzig seeks to recover under a theory of unjust enrichment. However, he has stated in paragraph 45 that the money transferred to SunTrust was mortgage payments.  Count XII of the Complaint alleges breach of contract for failing to properly apply the payments to the note.

As noted in *Diamond "S" Development Corp. v. Mercantile Bank*, 989 So.2d 696, 697 (Fla.App. 5 Dist. 2008), Herzig cannot pursue a "claim for unjust enrichment if an express contract exists concerning the same matter.  [citations omitted]."  Herzig does not address Florida law on this point, but rather simply recites the elements of an unjust enrichment claim under Kentucky law.  He does not address the existence of the express contract.  This response is insufficient to withstand dismissal.  Count V will therefore be dismissed.

## Count VI:  Equitable Estoppel

In Count VI, Herzig titles the claim "Equitable Estoppel," but does not assert any sort of claim within the paragraphs Count VI.  (DN 1, ¶¶ 48-52).  Herzig states that "Plaintiffs relied on Defendant's representation that the monthly payments were necessary, and thereby, entrusted Defendants with said deposits...As a direct and proximate result of the negligence and carelessness

of the Defendant as set forth above, Herzig suffered general and special damages..." ¶¶ 51-52.

As noted in *Flagship Resort Development Corp. v. Interval International, Inc.*, 28 So.3d 915, 923 (Fla.App.3 Dist. 2010), "equitable estoppel is not a cause of action, but an affirmative defense...Thus, as a matter of law, it is not a proper cause of action..." *Id. citing Major League Baseball v. Morsani*, 790 So.2d 1071, 1076 (Fla. 2001)(equitable estoppel is a defensive doctrine); *Dep't of Transp. v. First-Merit Bank*, 711 So.2d 1217, 1218 (Fla.2d DCA 1998).

Count VI will therefore be dismissed.

## Count VII: Negligent Misrepresentation

Count VII alleges that "[b]efore Defendant misappropriated the monies, Defendant represented to Plaintiff that an increase to the monthly payment would be required because of the forced place insurance...Defendant knew that its representation of insurance was false in that the insurance was not necessary nor was Plaintiff given notice and that the Defendant intended to use the money personally...Defendants intended these statements to induce Plaintiff into increasing the monthly payment resulting in either (I) increasing the Defendant's; [sic] accounts for its personal use; or (ii) causing the property to go into foreclosure." DN 1, ¶¶ 54-56.

Claims for negligent misrepresentation must be plead in conformity with the heightened particularity standard under Fed.R.Civ.P. 9(b). *Azar v. American Home Mortgage Servicing, Inc.*, No. 6:09-cv-1980-Orl-35DAB, 2010 WL 5648880(M.D.Fla. July 16, 2010), *citing Sunoptic Techs. LLC v. Integra Luxtec, Inc.*, No. 3:08-cv-878-J-16JRK, 2009 WL 722320, at *3 (M.D.Fla. Mar. 18, 2009). To plead negligent misrepresentation under Florida law, a plaintiff must allege: (1) the defendant made a statement of material fact that the defendant believed was true but was actually false; (2) the defendant was negligent because he should have know the statement was false; (3) the

defendant intended to induce the plaintiff to rely on the false statement; and (4) an injury resulted to the plaintiff acting in justifiable reliance on the false statement. *Azar, supra.* at *4, *quoting Simon v. Celebration Co.*, 883 So.2d 826, 832 (Fla. 5th DCA 2004).

Count VII is insufficient inasmuch as Herzig has failed to identify a statement of material fact that SunTrust believed to be true but was actually false. He alleges that SunTrust represented that an increase in the monthly payment would be required because of the forced place insurance. He does not allege that this statement was false, but rather that SunTrust knew that the insurance was not necessary. He also alleges that SunTrust *did not* inform him that it intended to "use the money personally." Herzig has failed to allege a statement of material fact that SunTrust believed to be true, but was actually false.

Further, nowhere does Herzig allege that he made payment as a result of his justifiable reliance on a material misrepresentation by SunTrust. Indeed, in the "Facts Giving Rise to the Lawsuit" section, Herzig states that "On or about February 2011, Plaintiff contacted SunTrust Mortgage about the increased mortgage amount. At that point, Plaintiff was first notified of the alleged forced place insurance and requested proof of payment for the insurance and a copy of the policy. SunTrust failed to provide this substantiating documentation...Upon being notified of the problem, the Plaintiff immediately engaged, [sic] ACE Property Services, (*Exhibit C*) and a new windstorm policy was issued March 22." DN 1, ¶¶ 18, 19. Thus the very allegations of the Complaint contradict any assertion that Herzig was induced to rely upon or did rely upon any representation concerning the forced place windstorm policy.

The claim for negligent misrepresentation is deficient and Count VII will therefore be dismissed.

<u>Count VIII: Intentional Interference with Contract Relations</u>

Herzig alleges in Count VIII that SunTrust intentionally interfered with its contract with his tenant by filing the foreclosure action. DN 1, ¶ 59. He states that "[a]s a direct and proximate result of the negligence and carelessness of the Defendants as set forth above, Herzig suffered general and special damages to be determined at trial. DN 1, ¶ 61.

This claim is insufficient to state a claim for intentional interference with contractual relations under Florida law. The elements of this cause of action are (1) the existence of a business relationship; (2) knowledge of the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Swope Rodante, P.A. v. Harmon*, 85 So.3d 508, 509 (Fla.2d DCA 2012).

First, Count VIII alleges that SunTrust acted negligently and carelessly in filing the foreclosure action, but that it intentionally interfered with his contract with his tenant. He alleges that he and his tenant were served with a foreclosure complaint which was dismissed by SunTrust two months later. DN 1, ¶¶ 24, 27. He alleges that SunTrust failed to follow proper procedures, including filing a nonverified complaint, failure to submit the required bond, and failure to provide Herzig thirty days' written notice and an opportunity to cure (DN 1, ¶ 25), the apparent negligent or careless conduct to which he refers. However, he does not allege that SunTrust provided notice of the foreclosure complaint without justification. To be clear, he alleges that SunTrust filed the foreclosure complaint improperly; that is prematurely and therefore without justification. However, it is the interference which must be intentional and without justification.

SunTrust cites to the case of *Dundee Naval Stores Co. v. McDowell*, 61 So. 108 (Fla. 1913)

for the proposition that a foreclosure does not *per se* destroy a leasehold interest, and therefore the leaseholder has a right to possession for the lease purposes as against a mortgagee. If such leaseholder is not estopped or has not forfeited or abandoned its property right in the lease, it cannot legally be deprived of such right except by due process of law. Thus the leaseholder is entitled to notice and an opportunity to be heard. *Id.* at 113. Thus upon the filing of a foreclosure complaint, SunTrust claims it was justified in giving notice to Herzig's tenant. The complaint does not allege that SunTrust lacked justification for service of the foreclosure complaint on the tenant, nor does Herzig respond to the argument in his brief.

Count VIII will be dismissed.


Count IX:  Slander of Credit

Count IX alleges that "the defendant improperly reported to the various credit agencies that Herzig was delinquent in payments on the note, and further, filed a Foreclosure Action that was not yet ripe...Defendant knowingly made the false statements...Defendant wrongfully and without privilege, has published matters or caused matters to be published that the are the current owners of the Property which is untrue and disparaging to Plaintiffs' interest in the Property. By doing the acts described above, the Defendant have [sic] slandered Plaintiffs' title to the Property." DN 1, ¶¶ 63-65.

Asserting that Herzig's claim is preempted by the Fair Credit Reporting Act, 15 U.S.C. § 1618h(e), SunTrust cites *Lofton-Taylor v. Verizon Wireless*, 262 Fed.Appx. 999, 1001; 2008 WL 189853 (11th Cir. Jan. 23, 2008), which held that "where a company furnished credit information about a consumer to a credit reporting agency pursuant to the Fair Credit Reporting Act, the

company furnishing the information is protected from state law invasion of privacy claims unless the information it provided was both false and also given with the malicious or willful intent to damage the consumer. *See, Hood v. Dun & Bradstreet, Inc*., 486 F.2d 25, 32 (5th Cir. 1973)."

Herzig's response is non-responsive to SunTrust's argument. He states that "there are no Kentucky cases that set forth the elements of a slander of credit claim as this is a fairly new tort." DN 9, p. 17. Citing to a Nevada case, Herzig urges that to state a claim for "slander of credit," a plaintiff must establish the "general elements of defamation." *Id.* Herzig does not allege in the Complaint that SunTrust's actions were willful or malicious, nor does he urge such in his response.

Herzig has not addressed SunTrust's argument or citation of authority that the claim for slander of credit is preempted by the Fair Credit Reporting Act. Count IX will be dismissed.

### Count X: Violation of Fair Debt Collection Act,[6] 15 U.S.C. § 1601, *et seq.*

Count X alleges violation of the Fair Debt Collection Act, 15 U.S.C. § 1601, *et seq.*, stating that SunTrust knowingly improperly filed a Foreclosure Action that was not yet ripe." DN 1, ¶ 68.

However, the FDCPA governs the conduct of debt collectors, the definition of which

specifically excludes "any person collecting or attempting to collect any debt owed...to the extend such activity...(ii) concerns a debt which was originated by such person; [or] (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). "Thus, a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned." *Belin v. Litton Loan Servicing, LP,* No. 8:06-cv-760-T-24EAJ, 2006 U.S. Dist. LEXIS 47953, 2006 WL 1992410, at *2 (M.D.Fla. July 14, 2006); *see Warren v. Countrywide Home Loans, Inc.*, 342 F.App'x 458, 460-61 (11th Cir. 2009)(noting its agreement with the conclusion that "an enforcer of a security interest, such as a [mortgage company] foreclosing on mortgages of real property...falls outside the ambit of the FDCPA except for the provisions of section 1692f(6)."

---

[6]15 U.S.C. § 1601, *et seq.* is the Fair Debt Collection Practices Act ("FDCPA").

*Foxx v. Ocwen Loan Servicing, LLC*, No. 8:11-CV-1766-T-17EAK, 2012 WL 2048252, *9 (D.C.Fla. June 6, 2012). Herzig has not controverted this authority. Not only is the claim devoid of the requisite elements of a FDCPA claim, the "Facts Giving Rise to this Lawsuit" section of the Complaint (¶¶ 9-37) allege that SunTrust was the originator of the mortgage, which is contrary to the definition of a "debt collector" under the FDCPA.

Count X will be dismissed.

### Count XI: Negligence

In Count XI, Herzig alleges that "the Defendant, acting as Herzig's lender and loan servicer, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, accurate crediting of payments , made by Herzig.

SunTrust contends that such allegations are insufficient, because

"[A]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." [citations omitted]...In addition, "loan servicers do not owe a duty to borrowers of the loans they service." [citations omitted].

*Morgan v. US Bank national Association*, No. C 12-03827 CRB, 2013 WL 684932 (N.D.Cal. Feb. 25, 2013); *see also Zaffrullah v. Countrywide Home Loans, Inc.*, No. 09-61142-CIV, 2010 WL 503074 (S.D.Fla. Feb. 8, 2010)(negligence claim dismissed on ground that plaintiffs failed to plead recognizable duty in what was arms-length creditor/debtor relationship); *Collier v. Wells Fargo Home Mortgage,* No. 7:04-CV-086-K, 2006 WL 1464170 (N.D.Tex. May 26, 2006)(Texas courts have held that there is no special relationship between a mortgagor and mortgagee).

Herzig has provided no caselaw in support of his negligence claim, and has not controverted the authority offered by SunTrust. Count XI will be dismissed.

## Count XII: Breach of Contract

Count XII of the Complaint alleges breach of contract. Herzig states the following:

> Plaintiff's original loan agreement set forth dates by which monthly principal and interest payments were due, and when late fees and other charges could be assessed. Alternatively, if the original note and deed of trust were properly assigned to Defendant, Defendant breached the note and deed of trust that Plaintiffs executed. The terms of the note required payments made by Plaintiffs to be applied properly to the note. The Defendant breached the note and deed of trust by failing to apply the payments made by Plaintiffs to Plaintiffs' loan, the result of which led to the Defendants attempted foreclosure on the Property...As a proximate result of Defendant's breaches, Plaintiffs have suffered compensatory damages in an amount to be proven at trial.

DN 1, ¶¶ 76, 77. In the "Facts Giving Rise to this Lawsuit" section, Herzig alleges, and we take as true for purposes of the motion to dismiss, that he secured a loan for the purchase of the Property allegedly with Suntrust Mortgage. DN 1, ¶ 9. Herzig initially made the requisite mortgage payments in a timely manner. DN 1, ¶ 10. In September 2009, after a roof inspection, the windstorm policy was renewed on the property for September 2009-2010. DN 1, ¶¶ 12-15. The policy was to renew on September 2010 for the period September 2010-2011 and Herzig had no reason to believe that the policy was not renewed, but Suntrust allegedly placed forced place windstorm coverage on the Property without notifying Herzig. DN 1, ¶ 16. In February 2011, Herzig's mortgage payment went up and he learned of the alleged forced place windstorm coverage on the Property. DN 1, ¶¶ 17, 18. Herzig then obtained a new windstorm policy which was issued on March 22. DN 1, ¶ 19. Herzig made the required mortgage payments from February 2011 to

October 2011, while attempting to obtain information necessary to resolve a dispute.[7]  Herzig then

received service of a foreclosure complaint in June, 2012. DN 1, ¶ 24.[8]  Herzig offers the conclusory

statement at ¶ 23 of the Facts that "SunTrust Mortgage [sic] continued refusal to cooperate with

Plaintiff is unjustified, wrongful, and constituted a clear breach of the SunTrust Mortgage's

contractual duties."  DN 1, ¶ 23.  This proposed conclusion of law need not be taken as true, of

course. *Iqbal*, 129 S.Ct. at 1950 ("pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth.").

When evaluated for substance, the claim for breach of contract is found wanting under

Fed.R.Civ.P. 8(a)(2).

The elements of a breach of contract claim under Florida law are (1) a valid contract; (2) a

material breach; and (3) damages.  *Havens, D.D.S v. Coast Florida, P.A.*, 117 So.3d 1179 (Fla. 2d

DCA 2013), *citing Rollins, Inc. v. Butland*, 951 So.2d 860, 876 (Fla. 2d DCA 2006); *Friedman v.

New York Life Insurance Company*, 985 So.2d 56, 58 (Fla. 4th DCA 2008).  However, "labels and

conclusions' or "a formulaic recitation of the elements of a cause of action" is insufficient to satisfy

Fed.R.Civ.P. 8(a)(2) under the *Iqbal/Twombly* standard to state a claim that is plausible on its face.

*Iqbal*, 129 S.Ct. at 1949.  As stated in *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1326 (11th Cir. 2012),

"Our task is to determine whether the pleadings contain 'sufficient factual matter, accepted as true,

---

[7]It is unstated in the Complaint or the June and August 2011 letters (denominated by Herzig as "QWRs") sent to SunTrust what the "dispute" was concerning.  Presumably, as Herzig has alleged that he "had no reason to believe that the [windstorm] policy was not renewed," that, in fact, his original windstorm policy lapsed and he "disputed" the placement of forced place windstorm coverage on the property.  However, this is mere supposition as the Complaint is devoid of facts concerning a "dispute."

[8]SunTrust contends that Herzig admits that he stopped making mortgage payments in October 2011.  Herzig does not do so directly.  Rather, from the statement that Herzig continued to make mortgage payments from February 2011 to October 2011, it can reasonably be inferred that Herzig did not continue to make mortgage payments after that date.  The foreclosure complaint to which Herzig refers in the Complaint (DN 1, ¶ 24) alleges that Herzig ceased making payments on June 1, 2011. DN 4-5, ¶ 6, however the court takes as true for purposes of this motion that he continued to make payments to October, 2011.

to "state a claim to relief that is plausible on its face."' *Iqbal*, 556 U.S. at 681, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1966). A claim is facially plausible when the court can draw 'the reasonable inference that the defendant is liable for the misconduct alleged' from the pled facts. *Id*". *Resnick*, 693 F.3d at 1326.

Herzig states, somewhat unclearly, that (1) the "original loan agreement" established dates when principal and interest payments were due and when late fees and charges could be assessed; (2) "alternatively," if the "original note and deed of trust" were properly assigned to Defendant, Defendant "breached the note and deed of trust Plaintiffs executed;" (3) The Defendant breached "the note and deed of trust" by "failing to apply payments made by Plaintiffs to Plaintiffs' loan." These allegations are not supported by facts alleged in the Complaint. The factual allegations recited above do not assert "failing to apply payments." Rather, Herzig contends, albeit in conclusory fashion, that SunTrust failed to cooperate in providing him information concerning his mortgage. The Complaint must contain sufficient facts to elevate a claim from a sheer possibility to plausibility in order to survive a motion to dismiss. *Iqbal*, 129 S.Ct. at 1949.

Under the notice-pleading standard, hyper-technical pleading is abolished, and the court is directed to "draw on judicial experience and common sense when construing the allegations in a complaint." *Iqbal*, 129 S.Ct. at 1950. The sparse claim for breach on contract is simply unsupported by facts sufficient to permit the court to draw a reasonable inference that SunTrust is liable for the misconduct alleged. *Id.* Count XII will be dismissed.

### Count XIII: Breach of the Implied Covenant of Good Faith and Fair Dealing

In Count XIII Herzig alleges that SunTrust breached the implied covenant of good faith and fair dealing when it allegedly "refused to properly apply the payments to Plaintiff's loan and

thereafter attempted foreclosure on the Property even though Plaintiffs provided proof of payments for the allegedly skipped months and Defendant thereafter refused to resolve the mistake with Plaintiffs in a equitable fashion." DN 1, ¶ 80.

Florida courts recognize that an implied covenant of good faith and fair dealing is a part of every contract. *Merrill Lynch Business Financial Services, Inc. v. Performance machine Systems U.S.A., Inc.*, No. 04-60861, 2005 U.S.Dist. LEXIS 7309, *31 (Mar. 4, 2005). However, as noted in *Mendez-Arriola, M.D. v. White Wilson medical Center PA*, No. 3:09cv495/MCR/EMT, 2010 WL 3385356 (N.D.Fla. Aug. 25, 2010),

> "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." [*Centurion Air Cargo, Inc. v. United Parcel Service, Co.,* 420 F.#d 1146, 1151 (11th Cir. 2005)]. A breach of the implied covenant claim may be dismissed as redundant if the conduct violating the implied covenant is duplicative of the breach of contract claim...Indeed, this court has determined that, "in order to state a claim for breach of the implied covenant of good faith and fair dealing, [p]laintiffs must identify the specific contract term(s) giving rise to the implied duty of good faith and also allege how [d]efendants breached their implied duty, alleging facts different from those giving rise to the breach of contract claim." *See Stallworth v. Hartford Ins. Co.*, 2006 WL 2711597, at *6 (N.D.Fla. Sept. 19, 2006).

Again, Herzig cites Kentucky law, and recites generalities concerning the covenant of good faith but completely disregards the Florida authority cited by SunTrust or the deficiencies in the Complaint. Count XIII fails to state allege any facts other than those which form the foundation of the breach of contract claim; ie. the failure to properly apply the payment according to the loan documents. Count XIII fails to state a claim for breach of the implied covenant of good faith and fair dealing and will therefore be dismissed.

Count XIV:  Intentional Infliction of Emotional Distress

Count XIV claims that "In carry out its attempt to wrongfully foreclose upon Herzig [sic] home, Defendants intentionally or recklessly engaged in extreme and outrageous conduct to cause Herzig emotional distress...The emotional distress Herzig has suffered as a result of this conduct was severe." DN 1, ¶¶ 86, 87. Numerous Florida cases have held that notice of default and threat of foreclosure are insufficient allegations to constitute outrageous conduct. *Anguiano v. Bank of America*, No. 12-CV-1752-IEG (BLM), 2013 WL 485765 (S.D. Cal. Feb. 6, 2013); *Robb v. Rahi Real Estate Holdings, LLC*, No. 10-81474-CIV, 2011 WL 2149941 (S.D.Fla. May 23, 2011), and cases cited therein. Herzig has not provided any caselaw to controvert this Florida authority. Count XIV will therefore be dismissed.

### Count XV: Violation of Deceptive and Unfair Trade Practive [sic] Act

Herzig alleges in Count XV that SunTrust has violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), F.S.A. 501.201-.213, by "carrying out its attempt to wrongfully foreclose upon Herzig's home, Defendants intentionally and recklessly engaged in extreme and outrageous conduct to cause Herzig emotional distress." DN 1, ¶ 91. He then states that "Defendants have engaged a [sic] systematic pattern of conduct designed and intended to induce individuals, otherwise susceptible to Defendants tactic, (including Plaintiff), via unfair, deceptive, or unconscionable acts or practices..." DN 1, ¶ 92.

These allegations are wholly insufficient to state a claim under FDUTPA which requires pleading with specificity (1) a deceptive act or unfair practice, (2) causation, and (3) actual damages. *Rollins v. Butland*, 951 So.2d 860, 869 (Fla.App.2 Dist. 2006); *Koch v. Royal Wine Merchants*, 907 F.Supp.2d 1332, 1350 (S.D.Fla. 2012); *Mortensen v. Bank of America, N.A.*, 2011 U.S.LEXIS 132637, *23-24 (M.D.Ga. Nov. 17, 2011)(FDUTPA claim dismissed; no provision of statute

specified). At best, Herzig alleges that it was an unfair practice for SunTrust to attempt to foreclose on his home. This is far from sufficient to identify an unfair or deceptive practice against which the statute is intended to protect the public and legitimate business enterprises. *Rollins, supra.* at 869. Herzig does not state a claim simply by employing the turn of phrase "engaged a [sic] systematic pattern of conduct..." The Complaint alleges no facts at all to support a FDUTPA claim.

Count XV will be dismissed.

## Conclusion

For the reasons set forth herein, all counts of the Complaint will be dismissed by separate Order for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

**IT IS SO ORDERED.**

March 31, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**